UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-401-S

MICHAEL B. MEANY                                                                                    PLAINTIFF

V.

AMERICAN CASUALTY COMPANY                                               INTERVENOR PLAINTIFF
OF READING, PENNSYLVANIA
as subrogee of the Fishel Company

V.

ALTEC INDUSTRIES, INC.                                                                         DEFENDANT

## MEMORANDUM OPINION

The plaintiff, Michael Meany, has filed a motion to compel (docket no. 50). On Monday, May 13, 2013, counsel for Mr. Meany and Altec Industries, Inc., appeared before the court for oral argument of the motion and they subsequently filed post-hearing memoranda at the court's request. Altec also filed, at the court's request and for *in camera* review, the document that is the principal focus of Mr. Meany's motion to compel: the text of a post-accident report prepared by Dr. Joshua Chard, who is Altec's Director of Product and Corporate Safety and also, significantly, a designated testifying expert in this matter.[1] Altec asserts that Dr. Chard's post-accident report is protected from discovery because of the attorney-client privilege and the work product doctrine. Mr. Meany disagrees.

The court has reviewed the motions, the hearing transcript, and the post-hearing

---

[1] Mr. Meany also sought to compel all results of post-accident dielectric testing performed on the digger derrick at issue in this matter. It is the court's understanding, based on the discussion between counsel at the hearing on the motion to compel and on the materials filed in the post hearing memoranda, that the portion of the motion pertaining to the test results has been resolved. If not, the parties should notify the court promptly.

```
```

submissions. For the reasons stated below, the court will grant Mr. Meany's motion to compel and require disclosure of the report. The court will defer its ruling on the spoliation motion for at least thirty days following Mr. Meany's receipt of the report and will, during that time, accept supplemental memorandum from either party regarding the spoliation issue.

## I.

This is a product liability action. Mr. Meany was severely burned as a result of electrocution while he was operating a digger derrick manufactured by Altec. Mr. Meany asserts that Altec is at fault, under theories of negligence, negligence *per se*, strict product liability, and failure to warn, whereas Altec maintains that operator error was at fault.

Approximately three weeks after the accident, Altec's Director of Product and Corporate Safety inspected the derrick and prepared a report, which he then attached to a memorandum that he sent to Mr. Robert D. Hunter, Altec's legal counsel on September 7, 2010 (the "Initial Report"). The body of the memorandum states, in its entirety:

> Rob,
>
> At your request as Altec® Industries, Inc. legal counsel, and in anticipation of litigation, I performed a limited investigation of the above incident. My investigation report is enclosed.
>
> Please call if you have any questions.

The text of the investigation report consists of only two, single-spaced pages. Appended to those pages were photographs, which Altec represents have already been provided to Mr. Meany's counsel.

After this litigation was filed, Altec designated Dr. Chard as a testifying expert and appears to have fully complied with the requirements of Federal Rule of Civil Procedure 26(a), including

2

preparing and serving a detailed expert report from Dr. Chard, with one known exception. Altec did not disclose the text of Dr. Chard's Initial Report because Altec claimed it was shielded from discovery pursuant to both the attorney-client privilege and the work product doctrine. Altec also asserted that Dr. Chard did not rely on the text of the Initial Report when he formulated the opinions contained in his subsequent expert report and, accordingly, the Initial Report was also irrelevant.[2]

---

[2] See Altec's Response to the motion to compel at 2 (docket no. 54)(" While Mr. Chard has been designed as an expert witness on behalf of Altec, his opinionsare not based upon his report. Instead, his opinions are based upon his inspections of the product at issue, his review of materials relating to this case, and his education, training, and experience."); *See also* Tr. of Hr'g at 31-32, 42-43 (docket no. 67):

> MR. ROBERT HOOD, JR.: … his opinions as detailed in his report come from the reading of the depositions, the photographs, the analysis of the documents, just as anyone else's expert --
> THE COURT: His opinions have nothing to do with when he looked at it at first?
> MR. ROBERT HOOD, JR.: I don't think they're specific --
> THE COURT: You just told me that he decided – when he looked at it at first, that he decided that there wasn't a problem and so he could send it -- send the truck away. So that has to be part of what he's thinking about; right?
> MR. ROBERT HOOD, JR.: Well, it's not -- I mean, it's not part of his expert report that was disclosed, you know, that it was based on his initial investigation and the findings of that, and so it's been our position that it is in fact privileged.
> …
> MR. ROBERT HOOD, JR.:   … But in this case, as far as he did inspect it and he's relying on his inspection -- he's not -- and he's not relying on the report in what he said or may have, you know, said in that report to come to the opinions that he's rendered here -

## II.

Because this is a diversity case, the court must consult state law to resolve claims of privilege and federal law to resolve contested assertions of attorney work product claims. *See* Fed. R. Evid. 501; *In re Powerhouse Licensing, LLC,* 441 F.3d 467, 472 (6th Cir. 2006). The party requesting the exclusion of evidence based on privilege bears the burden of establishing the applicability of the privilege. *Lexington Public Library v. Clark,* 90 S.W.3d 53, 62 (Ky.2002) (citations omitted).

### A.

Kentucky's current view of the attorney-client privilege established in Ky. R. of Evid. 503, is that it is almost sacrosanct. There are five enumerated situations in which the privilege does not attach, regardless of whether the communication otherwise satisfies the requirement of the rule (furtherance of crime or fraud; claimants through same deceased client; breach of duty by a lawyer or client; document attested by a lawyer; and joint clients). None of those situations appears applicable here. That does not end the inquiry, however, because a privilege can always be waived. That is what has occurred here.

As Kentucky's Supreme Court has observed, "[f]or information to be shielded from discovery by the attorney-client privilege, it must have been made in confidence to a lawyer for the purpose of obtaining legal advice." *Sanborn v. Kentucky*, 892 S.W.2d 542, 550 (Ky. 1994)(citations omitted). That clearly applies in this case. Dr. Chard, an Altec executive submitted the Initial Report to the company's lawyer "in anticipation of litigation." Had he not later been designated as one of Altec's testifying experts in this matter, his assertion of privilege would arguably be much stronger. But, as the Kentucky Supreme Court has observed:

4

"[a]mong other things, confidentiality implies that the information will not be used to form the basis of expert testimony at trial; this is because expert testimony must be cross-examinable." *Id.* (citing Ky. R. Evid. 705,[3] and *Foster v. Commonwealth,* Ky., 827 S.W.2d 670 at 678–679 (1992)). The court then cited with approval a treatise on Kentucky's rules of evidence:

> A distinction must be drawn between an expert hired to testify at trial and an expert consulted as an adviser who will not testify. The first is a witness who, as the Advisory Committee's Notes to Standard 503(a)(3) indicate, does not fall in the definition of representative of lawyer. In this situation disclosure is contemplated and the privilege is eliminated. A contrary finding would permit a party to exclude relevant evidence. A party ought not to be permitted to thwart effective cross-examination of a material witness whom he will call at trial merely by invoking the attorney-client privilege to prohibit pretrial discovery. [Footnotes and internal quotation marks omitted.] Weinstein and Berger, 2 *Weinstein's Evidence* (1982), Paragraph 503(a)(3)[01] subparagraph 3, p. 503–36.

*Id.*

Altec attempts to draw a line of distinction between any opinions formulated or reports prepared by Dr. Chard before he was designated a testifying expert, and those he prepared afterward, and asserted at the hearing that Dr. Chard did not rely upon his determinations in the Initial Report when he formulated his opinions in his expert report. This court is not persuaded. After reviewing the initial report *in camera*, the court finds that sizeable portions of the "Inspection" section the Initial Report were repeated verbatim in Dr. Chard's subsequent expert report. Dr. Chard appears to have accessed his Initial Report and read it sufficiently well to copy large portions of it and paste them into his subsequent report. Moreover, those sections were not contiguous. It therefore strains credulity for the court to accept that Dr. Chard selected the copied

---

[3] Ky. R. Evid. 705 is substantially the same as Fed. R. Evid. 705 generally, and both contain the same relevant language, specifically that a testifying expert may be required to disclose the facts or data underlying his opinion on cross-examination.

5

text without reviewing all of the surrounding language and making a conscious decision whether to reject it. The text of the report is thus unquestionably among the materials Dr. Chard reviewed and either relied by including large parts of it in his later expert opinion, or consciously rejected. For all of the above reasons, then, Altec has waived any attorney-client privilege it may have had with respect to the Initial Report.

**B.**

Whether the work product doctrine applies in this matter is governed by federal law generally. In particular, the court must look to the various provisions in Federal Rule of Civil Procedure 26, which states that a testifying expert's report must contain "the facts or data considered by the expert in forming [his opinions]," Fed. R. Civ. P. 26(a)(2)(B)(ii), and also states that "[o]rdinarily a party may not discover documents and tangible things that are prepared in anticipation of litigation," Fed. R. Civ. P. 26(b)(3)(A), unless:

1. They are otherwise discoverable, and the requesting "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means," Fed. R. Civ. P. 26(b)(3)(A)(ii); or

2. The materials constitute the expert witness's "own previous statement about the action or subject matter." Fed. R. Civ. P. 26(b)(3)(C).

The court has already rejected Altec's assertion that Dr. Chard did not consider the language of the Initial Report when he prepared his Expert Report, and in this particular case,[4] almost all of the text of the Initial Report that is not also included in the Expert Report constitutes factual statements, as opposed to opinions, even in the Initial Report's very brief "Conclusion." Accordingly, the requirements of Fed. R. Civ. P. 26(a)(2)(B)(ii) are met.

---

[4] The court notes that it is not stating that, as a matter of course, a similar document should be considered underlying "facts or data" without analysis. Here, however, almost all of Dr. Chard's sentences in the Initial Report are unquestionably statements of fact.

Because the Rule defines an expert's "previous statement" as, among other things, "a written statement that the persons has signed or otherwise adopted or approved," Fed. R. Civ. P. 26(b)(3)(C)(i), the Initial Report clearly constitutes one of Dr. Chard's "previous statements" which may be discoverable, even if work product, pursuant to Fed. R. Civ. P. 26(b)(3)(C).  Even if it were not, Mr. Meany cannot effectively cross-examine Dr. Chard regarding any differences he may perceive[5] in Dr. Chard's opinions and observations immediately following the accident and months later, when prepared his Expert Report, without the Initial Report, which he cannot obtain (or obtain its substantial equivalent) by other means.

### III.

For the reasons articulated more fully above, the court will compel disclosure of Dr. Chard's Initial Report.   Altec has waived any attorney-client privilege that may have existed with respect to the report by designating Dr. Chard as one of its testifying experts.   And, pursuant to any of the exceptions articulated in Federal Rule of Civil Procedure 26, the work product doctrine does not shield the Initial Report from disclosure either.

The court will enter an order consistent with this Memorandum Opinion.

cc:    counsel of record

---

[5] The court is not an expert in the technical aspects of this case and is, therefore careful to note that while there are some textual differences between Dr. Chard's Initial Report and his Expert Report, they may not be significant. Nevertheless they exist, and Mr. Meany and his expert must have the opportunity to determine their significance.